438 So.2d 1172 (1983)
STATE of Louisiana, Appellee,
v.
Fred W. STROUD, Appellant.
No. CR83-24.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
*1173 J. Michael Small and Kathrine S. Williamson, Small, Small, Williamson & Brocato, Alexandria, for appellant.
*1174 Joseph P. Beck, II, Dist. Atty., and James M. Buck, Asst. Dist. Atty., Colfax, for appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
FORET, Judge.
Fred W. Stroud (defendant) was charged by bill of information with possession of marijuana with intent to distribute, and with the illegal production (cultivation) of marijuana[1]. Pursuant to a plea bargain agreement, defendant plead guilty to the former charge, and the latter was dismissed. After completion of a pre-sentence investigation, the trial court sentenced defendant to serve a term of three years at hard labor and ordered him to pay a fine of $1,000[2].
ASSIGNMENTS OF ERROR
(1) The trial court erred in denying defendant's motion to suppress the evidence.
(2) The trial court erred in imposing an excessive sentence on defendant in violation of LSA-Const. Art. 1, § 20.
(3) The trial court erred in failing to comply with the sentencing guidelines contained in LSA-C.Cr.P. Article 894.1.

FACTS
Adrian Lamkin, a Grant Parish Sheriff's Deputy, testified at the hearing held on defendant's motion to suppress. He stated that he began his investigation of defendant's activities after receiving information from certain confidential informants that marijuana was being sold from defendant's home in Dry Prong. On April 23, 1982, he was contacted by one of his informants who told him that he had seen marijuana in defendant's home within the previous twenty-four hours. Based on this information, Deputy Lamkin prepared an affidavit and presented it to Judge Robert Jackson of the Ninth Judicial District Court (Rapides Parish). After reviewing the affidavit, Judge Jackson issued a search warrant authorizing a search of defendant's home (and any outbuildings or immovables) for marijuana.
Deputy Lamkin and another deputy, who had accompanied him to Alexandria, then returned to Grant Parish. They picked up a third deputy and proceeded to defendant's home where they conducted a search of the premises. They found two partially burnt marijuana cigarettes in the house itself. In a storage shed behind the house, the officers found eight packages (lids) of marijuana hidden in an ice chest. They also found marijuana plants growing in several different locations on defendant's property. After seizing this evidence, defendant and his wife were arrested[3].

ASSIGNMENT OF ERROR NUMBER 1
Defendant filed a motion to suppress the evidence. A review of that motion indicates that it was based on two grounds. The first was that the affidavit (on which the search warrant issued) failed to state with sufficient particularity the underlying facts and circumstances necessary to enable an independent magistrate to make a determination of whether or not probable cause existed to believe that marijuana would be found on defendant's property. The second was that the affidavit failed to establish the reliability of the confidential informant, who had provided Deputy Lamkin with the information contained therein.
After conducting a hearing on the motion, the trial court denied it, finding that, "... from the evidence presented here today... there is probable cause ... to uphold the search warrant ...". Defendant *1175 then entered into the plea bargain agreement, but reserved his right to appeal from the adverse ruling on his motion[4].
In his brief filed in this Court, defendant concedes that the affidavit describes the premises to be searched with sufficient particularity, and that the credibility of the informant is adequately supported therein. His sole contention is that the information contained in the affidavit is insufficient to constitute probable cause for the issuance of a search warrant.
The facts necessary to show probable cause may be established by hearsay evidence. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)[5]; State v. Jeffcoat, 403 So.2d 1227 (La.1981); State v. Paciera, 290 So.2d 681 (La.1974).
Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), set forth the constitutional requirements for obtaining a state search warrant, when an affidavit is based on hearsay information rather than the direct personal observations of the affiant. Aguilar stated that:
"... the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was `credible' or his information `reliable.'[5]"
378 U.S., at 114, 84 S.Ct., at 1513.
In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court granted certiorari: "Believing it desirable that the principles of Aguilar should be further explicated, ...". Spinelli then went on "... to delineate the manner in which Aguilar`s two-pronged test should be applied ...". Ultimately, Spinelli found that the information contained in the affidavit before the Court was insufficient to support a finding of probable cause. Spinelli stated that:
"Applying these principles to the present case, we first consider the weight to be given the informer's tip when it is considered apart from the rest of the affidavit. It is clear that a Commissioner could not credit it without abdicating his constitutional function. Though the affiant swore that his confidant was "reliable," he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that Aguilar`s other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his informationit is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. Cf. Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."
393 U.S., at 416, 89 S.Ct., at 589.
The Aguilar-Spinelli test remained the standard by which state search warrants were measured until the ruling of the court in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
In Gates, the Bloomingdale (Illinois) Police Department received by mail an anonymous hand-written letter informing them *1176 that a couple by the name of Sue and Lance Gates (who lived at a certain address specified in the letter) were involved in drug trafficking. The letter went on to detail the couple's method of obtaining the drugs they were selling, and stated that on a certain date they would be obtaining drugs in Florida by this method. By investigation, various law enforcement agencies corroborated the details of the letter, and a search warrant was obtained. When the couple returned to their home in Bloomingdale, the police met them. A search of their vehicle uncovered approximately 350 pounds of marijuana, and a search of their home revealed more marijuana, weapons, and other contraband.
The Illinois trial court subsequently granted the couple's motion to suppress this evidence, and the Illinois Appellate Courts affirmed that decision. However, Gates reversed the decisions of the lower courts. Gates noted a number of reasons for doing so, and for abandoning the test of Aguilar-Spinelli. Gates then stated:
"For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in Aguilar and Spinelli.11 In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. See Jones v. United States, supra; United States v. Ventresca [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684], supra; Brinegar v. United States [338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879], supra. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for... conclud[ing]" that probable cause existed. Jones v. United States, supra, 362 U.S., at 271, 80 S.Ct., at 736. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli."
103 S.Ct., at 2332.
Thus, Gates provides the standard by which defendant's claim (that his rights under the Fourth Amendment to the U.S. Constitution were violated) must be decided. The affidavit with which we are concerned states, in pertinent part, that:
"On April 23, 1982, your affiant, Deputy Adrian Lamkin of the Grant Parish Sheriff's Department, was contacted by a proven reliable and confidential informant who related to your affiant the following information: Within the past twenty-four hours, your informant has been legally within the above described residence and while there did see a quantity of substance the informant know[sic] to be marijuana ... The informant is familiar with the drug marijuana due to informants[sic] prior association with the drug during the past year."
It is our opinion that, under Gates, the trial court had a substantial basis for concluding that probable cause existed to believe that marijuana would be found on defendant's property. The informant claimed to have seen the marijuana. This provided an adequate basis to insure that the informant, if credible (defendant has conceded that the affidavit adequately supported the informant's credibility), obtained his information by personal observation, and not through mere rumor. Thus, not only does the affidavit pass the "totality of the circumstances" test set forth in Gates, but also the Aguilar-Spinelli test.
We specifically note that defendant also claims that his rights under LSA-Const. Art. 1, § 5, were violated by the search of his property and the seizure of evidence therefrom. In State v. Duncan, 420 So.2d 1105 (La.1982), the Court used the Aguilar-Spinelli test to analyze a defendant's claim that his rights under LSA-Const. Art. 1, § 5, were violated by the use of an anonymous *1177 informant's information in obtaining a search warrant. Under the facts and circumstances of this case, we need not, and do not, decide whether Gates will now be the standard for testing a defendant's claim that his rights under LSA-Const. Art. 1, § 5, were violated, when information provided by an anonymous informer is contained in an application for a search warrant. It is sufficient to state that the affidavit in this case was adequate under either standard or test.
However, defendant makes much of the fact that the affidavit simply states that the informant saw a "quantity of substance" (marijuana), rather than setting forth any specific amounts thereof. He argues that such information provides no basis for a magistrate to make a determination that probable cause exists to believe that the marijuana would still be present at the time that the search warrant was executed. In support of his argument, defendant relies on State v. Lewis, 385 So.2d 226 (La.1980), and State v. Boneventure, 374 So.2d 1238 (La.1979). We find these cases to be distinguishable on their facts from the one before us.
In State v. Boneventure, supra, the affidavit recited, in pertinent part, that:
"... said confidental [sic] and reliable informant had occasion to be present at 7164 Meadowpark on or about December 2, 1977 and observed a quantity of green vegetable matter identified and offered for consumption as being marijuana by the occupant of 7164 Meadowpark occupant being Allan Buchanan."
The application for a search warrant, based on this affidavit, was made on December 4, 1977, and was apparently executed that same day. On page 1239, Boneventure held that:
"Under the circumstances, as set forth in the affidavit, there was not probable cause to believe that the same consumable amount of marijuana which was offered to a person or persons for consumption approximately two days before remained at the place to be searched. Nor was there probable cause to believe, as opposed to grounds for suspicion, that other marijuana than that offered for consumption could be found at the place to be searched."
In State v. Lewis, supra, the affidavit recited, in pertinent part, that:
"Affiant, further informs the court that on or about December 7, 1977, he being said confidential and reliable informant had occasion to be in apt. # 133 of the Centurian Arms Apartments, located at 1819 N. Marque Ann and had occasion to see a quantity of green vegetable like substance, which was offered by David Wilson, occupant of the apartment, to above confidential informant as marijuana to smoke which he did and experienced a feeling of euphoria."
The application for a search warrant based on this affidavit was made on December 9, 1977, and the warrant was executed on December 12, 1977. However, the law enforcement officer who obtained the search warrant admitted that as much as a week might have passed between the time that the informant observed, was offered, and smoked the marijuana, and the date on which the search warrant was obtained. Lewis found that:
"When the warrant in this case was executed, three days after the informant told the officer of his observation and possibly as much as ten days after he actually observed and smoked the marijuana at defendant's apartment, there could be no reasonable belief that the marijuana offered to and consumed by the informant remained in the defendant's apartment."[6]
To the contrary, in the case before us, the affidavit stated that the confidential informant had seen marijuana in defendant's home within twenty-four hours preceding the date on which it was executed. In addition, the affidavit was presented to the magistrate, the search warrant was issued, and the search was conducted on that *1178 same date. Thus, at the time that the affidavit was presented to the magistrate, there was a reasonable basis for the conclusion that the drug would not be disposed of before a search could be conducted. See State v. Roubique, 421 So.2d 859 (La.1982).
Finally, defendant argues that the marijuana found in the storage shed should be suppressed because the affidavit contains no information to indicate that it would be found there. In essence, defendant argues that there was no probable cause to believe that marijuana was in the storage shed. We find no merit in defendant's argument.
The search warrant in this case authorizes a search of "... a woodframe dwelling, white color, located 4.15 miles on Hwy. 123 from it's [sic] intersection with Hwy. 8, travelling in north easterly direction toward US 167. House located on the left following these directions. This will include any outbuildings or immovables." (Emphasis ours.)
State v. Roach, 322 So.2d 222 (La.1975), held, on page 226, that:[7]
"In any event, a search warrant authorizing the search of the `premises' at a stated address must reasonably be interpreted to permit a search of the dwelling house proper, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word `house' or `premises.' United States v. Long, 449 F.2d 288 (8th Cir.1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972); Fine v. United States, 207 F.2d 324 (6th Cir.1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); State v. Brochu, 237 A.2d 418 (Me.1967)."
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
By these assignments of error, defendant contends that the trial court imposed an excessive sentence on him in violation of LSA-Const. Art. 1, § 20, and that it failed to comply with the sentencing guidelines contained in LSA-C.Cr.P. Article 894.1.
LSA-C.Cr.P. Article 894.1 sets forth guidelines to follow in imposing sentence and mandates that the trial court state for the record the considerations taken into account and the factual basis for its conclusions in imposing sentence in order to insure that each sentence is individualized to the offender and the offense. State v. McDonald, 414 So.2d 735 (La.1982); State v. Bourgeois, 406 So.2d 550 (La.1981); State v. Jones, 398 So.2d 1049 (La.1981). The trial judge need not articulate every aggravating and mitigating circumstance; however, the record must reflect that he adequately contemplated the guidelines in LSA-C.Cr.P. Article 894.1. State v. McDonald, supra; State v. Grey, 408 So.2d 1239 (La.1982); State v. Franks, 373 So.2d 1307 (La.1979), certiorari denied, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818 (1981).
In the case sub judice, the trial court entered in the record written reasons for sentencing. It first noted the circumstances surrounding defendant's arrest and his subsequent plea of guilty to one of the charges against him. The trial court then went on to state that it found that a number of mitigating factors existed on behalf of defendant. These included the following: that defendant had no prior history of delinquency or criminal activity; that defendant had earned a reputation in his community as a hard worker, a strong provider for his family, and a caring father for his children; that, during his past service with the U.S. Navy, defendant had distinguished himself as having been a responsible and disciplined sailor, and had won many commendations for his conduct; and, that defendant was not particularly in need of correctional treatment or a custodial environment, and that he was likely to respond affirmatively to probationary treatment.
On the other hand, the trial court found that several other factors and circumstances militated against probation, or a suspended *1179 or lesser sentence. These included the following: that the conduct for which defendant was convicted causes serious harm to individuals in the community; that defendant must have contemplated that these serious harms would result from his conduct; that the "victims" of defendant's crime had not facilitated or induced defendant's conduct, nor could he compensate all of these "victims" for the harm he had caused; that, although defendant is only 27 years old, married, and raising two young sons, a period of imprisonment would not impose excessive hardship for his family or himself; and, to impose less than the sentence given would deprecate the seriousness of defendant's crime.
It is obvious that the trial court adequately complied with the sentencing guidelines of LSA-C.Cr.P. Article 894.1; therefore, this Court's review is limited to a determination of whether the trial court abused its sentencing discretion. See State v. McDonald, supra; State v. Bourgeois, supra; State v. Bosworth, 415 So.2d 912 (La.1981).
The maximum penalty for possession of marijuana with intent to distribute is imprisonment at hard labor for ten years and a fine of $15,000. See LSA-R.S. 40:966(B)(2). Even though within the statutory limit, a sentence may violate a defendant's constitutional right against excessive punishment. State v. McDonald, supra; State v. Sepulvado, 367 So.2d 762 (La. 1979). Finally, while a trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed will not be set aside as excessive in the absence of an abuse of that discretion, the trial court does not have unbridled discretion in imposing sentence. State v. Tilley, 400 So.2d 1363 (La.1981); State v. Sepulvado, supra.
As noted above, the purpose of LSA-C. Cr.P. Article 894.1 is to provide the trial judge with guidelines so that he may individualize the sentence to fit the particular defendant, considering his background and the offense committed[8]. In this regard, we are disturbed by the following comment of the trial court on the fact that twenty-seven people saw fit to address letters to the court attesting to defendant's honesty, good character, willingness to work hard, his expressions of remorse for the crime he committed and his realization of the serious nature of that crime:
"BY THE COURT: Of course, I've got a mean job to do and I'm going to do my job. But I just wanted to let you know a lot of people write letters to the Court and then they'll call the Court up and say, don't pay any attention to that letter. You understand that?
BY MR. STROUD: Yes, sir.
BY THE COURT: I'm not saying it happened in this case but there's lots of cases that they do that. You go around and ask them to sign a letter."
To us, this comment indicates that the judge may have allowed his experience with others to influence his judgment concerning this defendant, something which LSA-C.Cr.P. Article 894.1 is designed to prevent. Also, the following comment indicates to us that the judge allowed his own personal feelings toward the crime committed by defendant to interfere with his duty to individualize the sentence:
"BY THE COURT: One charge has been dropped against you. Of course, that's ... but possession of marijuana with intent to distribute is personally ... I have a horror of that particular crime, selling that stuff out, your distribution. You understand that?" (Emphasis ours.)
Finally, we disagree with the trial court's assessment of one of the circumstances it considered in imposing sentence on defendant, while agreeing that all of the mitigating factors noted by it are present and supported by the evidence. It is clear to us that the imprisonment of defendant would place a substantial hardship on his family. Defendant's two stepsons are Jamie, age 6, and Kenneth, age 4. Young boys such as these need a father to help *1180 with their upbringing, and there is every indication in the record that defendant is raising them in a wholesome environment.
The articulation by the trial judge revealed that he reached this unfounded conclusion from the facts considered in imposing sentence. Since the sentence was apparently severe, the unfounded conclusion must be pointed out. See State v. Forshee, 395 So.2d 742 (La.1981), Justice Lemmon concurring (395 So.2d, at 745).
A harsh sentence for a first offender involved in the possession or sale of a small quantity of contraband may be excessive under certain circumstances. State v. McDonald, supra; State v. Grey, supra; State v. Tilley, supra. The evidence shows that defendant was found to be in possession of less than eight ounces of marijuana and nine marijuana plants.
It is our opinion that a sentence of probation will not deprecate the seriousness of defendant's crime and we believe (as stated by the trial court) that defendant is particularly likely to respond affirmatively to probationary treatment.
Under the circumstances present in this case, we find that the sentence imposed on defendant, that he serve a term of three years imprisonment at hard labor, is excessive. However, we also find that the fine of $1,000 imposed on defendant as part of his sentence is not excessive, and we will affirm that part of the sentence.

DECREE
For the above and foregoing reasons, defendant's sentence to a term of three years imprisonment at hard labor is hereby vacated, and the case is remanded to the trial court for re-sentencing in accordance with the views expressed herein. Defendant's sentence that he pay a fine of $1,000 is hereby affirmed.
SENTENCE VACATED IN PART, AFFIRMED IN PART, AND REMANDED TO THE TRIAL COURT FOR RESENTENCING.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
DOMENGEAUX, Judge, concurring in part and dissenting in part.
I concur in the treatment of assignments one (1) and three (3). I strongly disagree with the treatment of assignment two (2).
With all due respect, I suggest that the majority opinion places excessive emphasis on some of the utterings of the trial judge at the time that defendant was sentenced. The comments of the trial judge should not detract from the fact that the sentence imposed was well within statutory limits, certainly should not shock any of us, is not unfair, is not abusive of the district judge's wide discretion, and certainly is not excessive within the contemplation of Louisiana Constitution Article 1, Section 20. Although this defendant pleaded guilty to only one charge via plea bargain, the majority should not lose sight of the fact that the defendant was engaged in a pretty good little operation, i.e., evidence of marijuana cigarette smoking in his house and eight packages of marijuana hidden in an ice chest in an outhouse, all of which was compounded by a marijuana planting and growing operation on defendant's property. He could have gotten hard labor for ten years on his plea bargain, but only got three. If we start (or continue) to whittle sentences under the guise of excessiveness, we might as well eliminate the legislative prerogative of establishing indeterminate sentences, and leave the sentencing process to the whims and caprices of appellate judges.
Of course I do not relent from the position that I have previously taken on the question of sentence review for excessiveness as set out in my concurring opinions in State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983); State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), writ denied; and State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), handed down by this Court on this date.
NOTES
[1] Both charges constitute violations of LSA-R.S. 40:966(A).
[2] See LSA-R.S. 40:966(B)(2).
[3] Pursuant to the plea bargain agreement entered into by defendant and the State, defendant's wife, Rhonda T. Stroud, was allowed to plead guilty to a reduced charge of simple possession of marijuana. Mrs. Stroud was sentenced to a term of six months in the parish jail (suspended), and was ordered to pay a fine of $500.00 (in default of which she was to serve a term of ninety days in the parish jail).
[4] See State v. Crosby, 338 So.2d 584 (La.1976).
[5] Jones v. United States, supra, was overruled on other grounds in United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
[6] See 385 So.2d, at 229.
[7] See also State v. Michel, 422 So.2d 1115 (La. 1982).
[8] See State v. Tilley, supra.