GUIDRY, Judge.
On May 31, 1984, a true bill was filed charging the defendant, Alvin Sam, with the second degree murder of Milton Leday, a violation of La.R.S. 14:30.1. The defendant had previously been convicted of the second degree murder of Milton Leday but in State v. Sam, 412 So.2d 1082 (La.1982), the Louisiana Supreme Court reversed the defendant’s conviction and remanded the case for a new trial. On July 27, 1984, the defendant filed a motion to dismiss alleging that the case should be dismissed because a knife, which had possible exculpatory value, had been lost by a defense witness. This motion was denied. On September 22, 1984, a twelve member jury found the defendant guilty of manslaughter; the verdict was unanimous. On January 11, 1985, the defendant was sentenced to serve twenty-one years at hard labor. This sentence was ordered to run consecutively with a six (6) year sentence defendant received for a previous theft conviction. The defendant appeals urging four assignments of error.
FACTS
On November 30, 1979, the defendant, the victim and several others were playing poker in the Gambling Shack at the Happy Landing Club in Ville Platte, Louisiana. Approximately 30 minutes after the defendant had joined the game, he and the victim became involved in an argument over a hand of cards. Subsequently, the victim, who was seated next to the defendant, stood up and hit or pushed the defendant, causing him to fall against a wall. The defendant immediately pulled a gun from his rear pocket area and shot the victim. It should be noted that the defense and the prosecution differ as to whether the victim was reaching in his pocket at the time of the shooting.
After the shooting, the victim was carried from the club and placed on the side of the street until he was transported to the hospital. Wilson Joseph, a witness for the defendant, testified that he picked up an open pocket knife from the area where the victim was lying outside the club. The defense attempted, without success, to enter this knife into evidence during the first trial.[1] At the second trial, Joseph testified that he lost the knife soon after the first trial. Several other witnesses, including the investigating officer, testified that they did not see any knife in the crime area.
*771 Officer Joseph Toussant, Ville Platte Police Department, was the first law enforcement officer to arrive at the crime scene after the shooting and he observed the defendant standing in the Gambling Shack with a .22 caliber pistol in his hand. After seizing the weapon, the officer noticed that the pistol contained four bullets, i.e., three (3) live rounds and one (1) spent round.
Dr. Pedro Mora treated the victim for a gunshot wound to the lower abdomen on the night in question. On December 2, 1979, the victim died and the cause of death was determined to be the gunshot wound received on November 30, 1979.
ASSIGNMENTS OF ERROR
1. Trial court erred in denying the defendant’s motion to dismiss due to the inability of a witness to produce a weapon found at the crime scene, or in the alternative, to continue the trial.
2. Trial court erred in imposing an excessive sentence.
3. Trial court erred in failing to follow sentencing guidelines; specifically, that the court imposed sentence before allowing the defendant an opportunity to traverse the pre-sentence investigative report and that the court did not afford the defendant an opportunity to produce any evidence in mitigation.
4. Trial court erred in finding the defendant guilty of manslaughter because insufficient evidence was presented by the State to prove, beyond a reasonable doubt, that the killing was not in self-defense.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in denying his motion to dismiss due to the inability of a witness, Wilson Joseph, to produce a weapon, which had possible exculpatory value, allegedly found at the crime scene. The defendant argues, in the alternative, that the district court should have granted a continuance until the evidence was found.
At the second trial, Wilson Joseph testified that he found a six (6) inch knife around the area where the victim had been laying on the ground before being transported to the hospital. He testified that he lost this knife after the first trial. There is nothing in the record which indicates that the State was ever in possession of this weapon.
Even though the Louisiana Supreme Court, in State v. Sam, supra, held that a proper foundation was laid for the admission of this knife into evidence, it was defendant’s obligation to introduce this evidence. Indeed, if this evidence was so vital to the defendant’s case, he should have made every effort to obtain the knife from Joseph so it could have been safely stored for the retrial. The defendant’s argument that it was not possible for him to contact Joseph because the defendant was incarcerated does not withstand logic or common sense. The defendant could have easily asked some other person to obtain the evidence from Joseph.
There is nothing in the record which would indicate that the district court, at the new trial, would not have admitted the knife into evidence had the defendant attempted to introduce it. The defendant has failed to cite any jurisprudence which requires a district court to dismiss a case or grant an indefinite continuance because a witness lost an item of evidence in his possession.
Based on the foregoing, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
The defendant contends that the trial court failed to follow the sentencing guidelines set out in C.Cr.P. Art. 894.1, in that, the court did not allow the defendant an opportunity to traverse the pre-sentence investigation report or the opportunity to produce evidence in mitigation before announcing sentence, thus, resulting in an excessive sentence.
Article I, § 20 of the Louisiana Constitution of 1974 provides in part that:
*772 “No law shall subject any person to ... cruel, excessive, or unusual punishment.”
The Louisiana Supreme Court in State v. Sepulvado, 367 So.2d 762 (La.1979), held that Article I, § 20 created the power of appellate review for excessiveness of sentences although imposed within statutory guidelines. Sentences have been deemed excessive when the penalty imposed, in light of the harm suffered by society, is so disproportionate to the crime committed as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980).
Article 894.1 of the Code of Criminal Procedure aids both the trial judge in the exercise of his broad sentencing discretion and this court in reviewing sentences for alleged excessiveness. The purpose of the article is to provide the trial court with standards so that it may individualize the sentence to fit the particular defendant. State v. Stoner, 438 So.2d 1275 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 118 (La.1984).
Although sentencing criteria under this article aids the trial judge in the exercise of his sentencing function, a less than rigid application of this article’s provisions does not necessarily require a remand. State v. Lewis, 436 So.2d 634 (La.App. 3rd Cir.1983). Also, the trial court need not articulate every aggravating and mitigating circumstance in imposing sentence. State v. Richardson, 438 So.2d 1315 (La. App. 3rd Cir.1983); State v. Stroud, 438 So.2d 1172 (La.App. 3rd Cir.1983); State v. Moss, 438 So.2d 1283 (La.App. 3rd Cir. 1983), writ denied, 443 So.2d 588 (La.1983).
In the case at bar, the trial court first read its proposed sentence to the defendant. After proposing a sentence, the court allowed the defense attorney an opportunity to present the mitigating factors which he wished the court to consider. The trial court, after hearing defense counsel’s argument, decided that the proposed maximum sentence of 21 years at hard labor, to run consecutively with a previous sentence of six years for a theft conviction, should stand.
Maximum sentences are properly imposed in cases involving most serious violations of the described offense, and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984); State v. Robinson, 431 So.2d 104 (La.App. 1st Cir.1983); State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983). We find no clear error in the trial judge’s conclusion that this case warrants a maximum sentence. The defendant has a long history of prior arrests and convictions. The defendant committed a theft and was convicted and sentenced after he was charged with the second degree murder of the victim. The trial judge could not detect any remorse on the defendant’s part for any of his actions. The defendant shot and killed a person who had not physically harmed him in the past, and the trial court felt that there was enough evidence to convict the defendant of the original second degree murder charge as well as the lesser crime of manslaughter.
It is almost too well known to state that the trial judge is given wide discretion in the imposition of sentence within the statutory limits. State v. McClain, 426 So.2d 338 (La.App. 2d Cir.1983); State v. Lanclos, 419 So.2d 475 (La.1982). We conclude, after review of the record, that the trial judge did not manifestly abuse his discretion; that the sentence does not shock our sense of justice; and, that the sentence imposed by the trial court should stand. We further conclude that, even though the trial judge did not allude to every aggravating and mitigating circumstance, the judge adequately took into consideration the provisions of La.C.Cr.P. Art. 894.1.
Based on the foregoing, these two assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 4
The defendant contends that the trial court erred in finding the defendant guilty of manslaughter because insufficient evi *773 dence was presented by the State to prove, beyond a reasonable doubt, that the killing was not in self-defense. The defendant argues that the State failed to prove that he could not have reasonably believed that he was in imminent danger of losing his life or receiving great bodily injury, and that the killing was not necessary to save himself from that danger.
In reviewing a case to determine whether the evidence supports a conviction, the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires this court to examine the record to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
La.R.S. 14:31 defines manslaughter, in pertinent part, as follows:
“Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or

Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.”
La.R.S. 14:20 defines justifiable homicide as follows, in pertinent part:
“A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger...”
A review of the record reveals that sufficient evidence was presented at trial to sustain the defendant’s conviction for manslaughter.
At trial, Oswald Arvie testified that on November 30,1979, he ran a poker game in the Gambling Shack, which was located in the Happy Landing Club. He testified that, during the game, the defendant entered the gambling area and sat next to the victim. He testified that, after approximately 30 minutes, the two men began to argue about the game. He testified that the victim then got up from the table and pushed the defendant, causing him to fall against the wall. Arvie testified that, at that point, the defendant pulled a gun from his back pocket area and immediately shot the victim. He testified that, at the time of the shooting, the victim did not have a weapon in his hand nor did the victim appear to reach for his pocket area.
Charles Harrison, Murphy Allison, Leroy Campbell and Chester Gallow, Jr., were in the Gambling Shack at the time of the shooting and their testimony corroborated the testimony given by Arvie. Harrison further testified that, immediately prior to the time of the shooting, the victim was standing still and was not moving towards the defendant.
Officer Joseph Toussant, Ville Platte Police Department, testified that on the night in question, he was the first law enforcement officer to arrive at the crime scene. Officer Toussant testified that when he entered the Gambling Shack, he observed the defendant standing in the room with a .22 caliber pistol in his right hand, and noted that the victim was being carried out of the room. The officer testified that the pistol contained four bullets, i.e., three (3) live rounds and one (1) spent round. The officer testified that he did not see any other weapons in the Gambling Shack.
Lieutenant Dickie Fontenot, Ville Platte Police Department, testified that he initial *774 ly observed the victim lying in the middle of the street after the shooting. Lieutenant Fontenot testified that he did not find a weapon in the immediate area of the victim.
Dr. Pedro Mora testified that on the night of the shooting, he treated the victim for a gunshot wound to the lower abdomen. He testified that on December 2, 1979, the victim died and that the cause of death was the gunshot wound.
The defendant testified that on the night in question, he and the victim argued during a card game in the Happy Landing Club. He testified that the argument subsided for a short time but that shortly thereafter, the victim hit him. The defendant testified that, at that point, he was hanging onto a railing when he noticed that the victim was approaching him with his hand in his pocket. The defendant testified that he shot the victim, at that time, because he thought the victim was going to cut him. He testified that he thought the victim was reaching for a knife in his pocket and that he shot the victim with the intention of hitting him in the leg.
While the defendant argues that he was acting in self-defense, viewing the evidence in the light most favorable to the prosecution, it does not appear that the victim made any sort of aggressive move toward the defendant after he pushed him. All of the occupants of the gambling room, with the exception of the defendant, testified that the victim stood still after he pushed the defendant and that he did not reach in his pocket. It appears that, under the circumstances, a reasonable man would not have believed that he was in imminent danger of losing his life or receiving great bodily injury.
Based on the foregoing, it appears that the trial court did not err in finding the defendant guilty of manslaughter.
For the above and foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. In State v. Sam, supra, the Supreme Court concluded that a proper foundation for introduction of the knife was laid and that the trial court erred in holding otherwise.