400 So.2d 1363 (1981)
STATE of Louisiana
v.
Roy TILLEY.
No. 80-KA-2351.
Supreme Court of Louisiana.
July 2, 1981.
*1364 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Duncan Kemp, Dist. Atty., Byards Edwards, Jr., Abbott Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Timothy Higgins, Hammond, for defendant-appellant.
CALOGERO, Justice.[*]
Defendant Roy Tilley was charged by bill of information with distribution of cocaine, a controlled dangerous substance, in violation of R.S. 40:967(A). Following trial, the twelve member jury returned a unanimous verdict of guilty as charged. The trial judge sentenced defendant to serve twenty-one years at hard labor and to pay a fine of $10,000.00. On appeal to this Court, defendant argues only that the sentence is excessive.
The prison sentence for distribution of cocaine is from a minimum of five years at hard labor to a maximum of thirty years; additionally a defendant may be sentenced to pay a fine of not more than fifteen thousand dollars. R.S. 40:967(B).[1] Defendant therefore received a sentence which is approximately two-thirds that maximum allowed under the statute. The statute does not prohibit the trial judge from suspending the sentence and placing the defendant on probation.
Defendant's arrest on May 29, 1979, at his trailer home in Springfield, Louisiana, was the result of an investigation by the Louisiana State Police Narcotics Division. Pursuant to a tip from a confidential informant, Agent Thomas Fischer went to defendant's home on February 9, 1979, with the confidential informant and asked defendant if he had narcotics for sale. Defendant stated *1365 that he had none, but suggested that drugs could be purchased from a neighbor.
On February 23, 1979, Agent Fischer returned to defendant's home. Defendant asked Fischer if he had come to purchase narcotics. Fischer replied that he had and inquired whether defendant had any cocaine. Defendant answered in the affirmative and produced a small bottle containing approximately 30 foil packets. Inside the foil packets was a white powder. Fischer selected six packets and paid defendant $60.00 or $10.00 per packet. Fischer left the trailer after purchasing the six packets. Fischer later obtained an arrest warrant for defendant and a search warrant for the trailer.
After the trial, the judge ordered a presentence investigation. At the sentencing hearing, neither the state nor the defendant introduced any evidence. Referring to the presentence investigation report, the trial judge imposed the sentence of 21 years imprisonment and a fine of $10,000.00.
Defendant concedes that the judge complied with C.Cr.P. art. 894.1 which sets forth guidelines for consideration in imposing sentence and mandates that the trial judge state for the record the considerations taken into account and the factual basis for these considerations in imposing sentence.[2] Defendant argues instead that the trial judge failed to give sufficient weight to defendant's youthful age (18 years old) and the fact that he was a first offender; that is, he had never before been convicted of a felony.[3]
In imposing defendant's sentence, the trial judge cited the reasons listed in C.Cr.P. art. 894.1(A) as those for the sentence he was imposing:
"(1) There is an undue risk that during the period of a suspended sentence or probation that the defendant will commit another crime.
"(2) The defendant is in need of correctional treatment or custodial environment that can be provided most efficiently by his commitment to an institution.
"(3) A lesser sentence will deprecate the seriousness of the offense."
*1366 In compliance with article 894.1(C), the judge stated that defendant sold not one, but six, packages of cocaine from the approximately thirty he had for sale. The judge noted that defendant had told Agent Fischer that he was out of another narcotic, Dilaudid,[4] at the time of the cocaine sale. The judge stressed that the Legislature had determined that cocaine was a particularly harmful drug with a high potential for abuse and had set appropriately high penalties for its sale. Finally, the judge stated that it was his opinion that defendant was in the "main stream of the flow of narcotic traffic" and that there was no reason to believe that defendant would not remain in the narcotics business if set free.
The judge then turned to the presentence investigation report which showed among other things that defendant had two DWI convictions and a third charge outstanding. Observing that the first conviction was without counsel, the judge said that he doubted that the third offense DWI would stand. The judge also noted that the defendant had been convicted of driving under suspension and contributing to the delinquency of a juvenile. Only the first of any of these offenses had been committed before the distribution of cocaine for which defendant was being sentenced. The judge commented that defendant had received a break by being placed on active probation previously. The judge then opined that defendant's past conduct gave him every reason to believe that defendant could not control his own life.
Louisiana Constitution, Art. I, § 20 prohibits the imposition of excessive punishment. Accordingly, in State v. Sepulvado, 367 So.2d 762 (La.1979), this Court held that a sentence, although within the statutory limit, might violate a defendant's constitutional right against excessive punishment. While a trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed will not be set aside as excessive in the absence of an abuse of that discretion, the trial court does not have unbridled discretion in imposing sentence. State v. Sepulvado, supra.
The purpose of C.Cr.P. art. 894.1 is to provide the trial judge with guidelines so that he may individualize the sentence to fit the particular defendant, considering his background and the offense he committed. In this regard we are disturbed by the comment of the trial judge that:
"Mr. Tilley, this Court has in its short history been lenient to young people; however, it has been totally disappointed, and it has learned that age cannot be a factor in the determination of such a serious offense, especially when a pattern of life has been struck, as has yours."
To us, this comment indicates that the judge allowed his experience with others to cloud his judgment concerning this defendant, something which article 894.1 is designed to prevent.
Our review of the presentence investigation report reveals that defendant, following the second DWI conviction, was referred to the Baton Rouge Substance Abuse Clinic. A report from the clinic verifies that defendant did indeed report for treatment. This compliance indicates a possible willingness on the part of defendant to alter his present life-style, which includes drug use beginning at age seventeen.
At the time of the sale of the cocaine, defendant was eighteen years old. He was nineteen when sentence was imposed. The presentence investigation report convinces us that defendant was engaged in a very small-time operation even though it did continue for a period of time.
Approximately a month after the sale of cocaine to Agent Fischer but prior to his arrest on the instant charge, defendant sold *1367 eight Doriden[5] pills to the same policeman. This sale formed the basis for another charge against defendant. Following his conviction for the sale of cocaine, defendant entered a guilty plea to the reduced charge of conspiracy to distribute Doriden. For that conviction defendant received a prison sentence of five years to run concurrently with the sentence imposed for the sale of cocaine. Still unresolved is a marijuana possession charge growing out of the execution of the search warrant at which time this substance was found in the trailer occupied by defendant.
According to the presentence investigation report, based upon defendant's past driving and other offenses, the District Attorney's and Livingston Sheriff's Offices recommended against a suspended sentence with probation. While defendant, as a first offender, would be eligible for probation, we are not prepared to say that it was error to impose a prison sentence and not suspend it and place defendant on supervised probation. However, the fact that he did register and continued to attend the drug abuse clinic indicates that defendant is amenable to the idea, at least, of treatment and rehabilitation.
A review of some recent drug cases, the sentences imposed and the outcome of the appeals in this Court is helpful to our consideration of the appeal before us in the instant case. In State v. Forshee, 395 So.2d 742 (La.1981), we vacated as excessive a sentence imposing three years at hard labor and a fine of $7,500.00. That defendant had been found in possession of nineteen preludin pills and charged with possession of the drug with intent to distribute. Forshee was twenty-two at the time of his offense and had been working during the periods he was not attending school.
Conversely, we upheld a twenty-year sentence for distribution of cocaine in State v. Cain, 382 So.2d 936 (La.1980), where the quantity of cocaine was many times that sold by the defendant before us now.[6] Furthermore, Cain was already on parole for a prior conviction for possession of cocaine with intent to distribute.
We also upheld a twenty-one year sentence in State v. Bonanno, 384 So.2d 355 (La.1980). In Bonanno, the cocaine sold had a wholesale value of $22,000.00 and was intended to open a large new cocaine market in the Shreveport area. Bonanno had told the undercover agent that he delivered cocaine to a variety of cities throughout the United States and that he could supply cocaine on a regular basis. Bonanno had found the person necessary to invest the money and had purchased the cocaine for resale. Bonnano was truly a large scale operator and we had no qualms with the sentence he received.
Turning our attention to the defendant before the bar, we notice substantial differences between his situation and those of Bonanno and Cain. As previously noted, defendant sold a very small quantity of cocaine. Whatever might be said about the trial judge's conclusion that defendant is in the "main stream" of drug traffic, defendant is no more than a small fish. We find that defendant's work record is steady. Defendant is a high school drop out, having finished the tenth grade. Nevertheless, defendant has basically had regular employment of the type such an individual could expect. At the time of his arrest, defendant was working as a forklift operator. During the time he was free on bond, pending trial, and again while awaiting sentencing, defendant secured employment. One *1368 of the goals defendant established at the drug abuse clinic was to qualify for a G.E.D. to compensate for not having completed high school.
Although defendant is not married and therefore does not have a family to support in the traditional sense, defendant does live with a physically disabled mother.
For such a young person, eighteen at the time of the drug sale and nineteen at sentencing, even the statutory minimum of five years at hard labor unsuspended may be harsh. Certainly a sentence of twenty-one years and a fine of $10,000.00 is excessive. The Model Penal Code, Proposed Official Draft, § 6.05 suggests that a young adult offender (between the ages of sixteen and twenty-two) convicted of a felony be sentenced to a "special term of imprisonment without a minimum and with a maximum of four years, regardless of the degree of the felony involved" if the trial court determines that a prison sentence is indeed required. Our legislature has set forth a maximum sentence of thirty years with the additional possibility of a fine up to $15,000.00 for this crime. While there is no special provision for the sentencing of young offenders, the legislature has set forth in article 894.1 guidelines to be considered by the trial judge in determining the sentence to impose. The mitigating circumstances, although not controlling, may not be disregarded by the trial judge. When a small-time end man receives the same sentence as a large scale drug wholesaler, the sentences are not individualized to fit the particular defendant and the offense.
For the foregoing reasons a sentence of twenty-one years and a fine of $10,000.00 for an eighteen year old first offender as this one, even considering that he might have been on the bottom end of selling cocaine and/or other drugs in small quantities, is excessive. In our view, the range of constitutionally permissive sentences in cases of this sort would be from the statutory minimum to as much as ten years.

Decree
For the foregoing reasons, defendant's sentence is vacated and the case remanded to the trial court for resentencing in accordance with the views expressed herein.
SENTENCE VACATED, REMANDED TO THE TRIAL COURT FOR RESENTENCING.
LEMMON, J., dissents and will assign reasons.
BLANCHE, J., dissents and would not disturb the sentence imposed by the trial judge.
MARVIN, J. Ad Hoc, dissented for reasons assigned.
MARVIN, Justice Ad Hoc, dissenting.
In the sentencing process, if the trial court says too little, this court vacates the sentence and directs the trial court to follow the guidelines of C.Cr.P. 894.1. Here the same result is reached, not because the trial court said too little, but because the trial court said too much.
While I must accept this court's declaration of its authority to determine whether a sentence is excessive, I have difficulty believing that either the electorate or the delegates to the constitutional convention intended such a result by the language of Art. 1, § 20, La.Constn.:
"No law shall subject any person to ... excessive ... punishment. * * *" Emphasis supplied.
I would rather believe that this language means that the electorate was authorizing the judiciary to strike down laws in which the legislature imposed a sentence which was highly disproportionate and constitutionally out of reasonable connexity to the severity of the crime, e. g., "whoever commits the crime of burglary shall be sentenced to imprisonment at hard labor for not less than 30 years and not more than 50 years without probation, parole or suspension of sentence."
*1369 Moreover, under our legal system, with all of its imperfections, the people have seen fit either to determine for themselves by constitutional declaration, or to empower their legislators to determine, what punishment shall be imposed for particularly described criminal conduct. The judiciary and the executive have certain correlative powers of review, pardon, and commutation, but the legislative crime and punishment power exclusively belongs to the people or their legislators.
I am also satisfied that the Legislature has acted within its power in generally categorizing adult and juvenile offenses and that it is not constitutionally impermissible to subject a person over the age of 17 years to the adult process. As the majority states, the Legislature has not made age a specific guideline in C.Cr.P. 894.1, although a trial judge may consider age or other unstated factors in determining the sentence to be imposed in the individual case. The penalty range, legislatively fixed, is "... not less than five years nor more than thirty years ..." LRS 40:967(B)(1).
The defendant, and apparently the majority, concede that the trial court followed the statutory guidelines in imposing a sentence of 21 years, but the majority is disturbed by the trial judge's express consideration and discounting of this defendant's age as reflected in the statement by the trial judge to the effect that "my experience in being lenient with young offenders such as you, has been totally disappointing, and I have learned by this experience that age cannot be a controlling factor in the determination of sentence for such a serious offense, particularly when a pattern of life has been struck as yours has." The trial judge additionally commented:
"(1) There is an undue risk that during the period of a suspended sentence or probation that the defendant will commit another crime.
"(2) The defendant is in need of correctional treatment or custodial environment that can be provided most efficiently by his commitment to an institution.
"(3) A lesser sentence will deprecate the seriousness of the offense."
The trial court additionally observed that it was his opinion that defendant was in the "main stream of the flow of narcotic traffic" and that there was no reason to believe that defendant would not remain in the narcotics business if set free.
The circumstances of this defendant support all of these conclusions of the trial judge. The offense is made "serious" by the legislative graduation of controlled dangerous substances. Defendant indicated that he was temporarily out of other drugs in which he dealt. After defendant's arrest, defendant sold other drugs to the same undercover policeman and had a quantity of marijuana in his trailer. After defendant's arrest for cocaine distribution, defendant was convicted of DWI, driving while under suspension, and contributing to the delinquency of a juvenile. These are factors which certainly may be considered by the sentencing judge even though they are not included among the statutory guidelines. These circumstances strongly support the trial judge's conclusion that he had every reason to believe that defendant could not control his own life, that defendant had struck a pattern, that there was an undue risk defendant would commit another crime, and that defendant is in need of custodial environment. The circumstances also support specifically the trial judge's observation that defendant was in the "main stream of the flow of narcotic traffic" and show defendant's disregard of the law.
I am satisfied that a so-called small-time narcotics operator who engages in the business for a long period of time (as the majority says) is "within the mainstream of narcotics traffic" as the trial court says. A "small fish" in the main stream preys on smaller, and, as he grows, on increasingly bigger fish.
Sentences, verdicts, money awards, and other results in our legal system vary with *1370 the peculiar facts of the individual case and with the vagaries of the human and individual trier of fact. Seven, or any number of, judges may each impose a different sentence under the circumstances of this case, all of which could be within the range of discretion afforded by law and which could be upheld as not abusive of that discretion. Our state's legal system provides for such varying results from parish to parish, from judge to judge, from individual to individual, because this "justice" is purposely designed to be rendered in the trial courts and not uniformly by one body statewide.
When a trial court has stated and supported the factual basis for which it has given its consideration of the statutory guidelines and for other legitimate and proper considerations in imposing a sentence within the range fixed by the legislature, this court should not find that sentence excessive under the constitution.
Additionally, I observe that the trial court considered the 21-year sentence in imposing a concurrent 5-year sentence on the defendant for the crime of conspiracy to distribute Doriden. If the 21-year sentence is vacated with directions to limit a resentence to no more than 10 years, as the majority states, the 5-year sentence should likewise be vacated to allow the trial court to reconsider the total sentences for this defendant.
I find no abuse of the trial court's sentencing discretion because it is shown that the trial court followed the statutory guidelines, to the extent of individually considering this defendant's age in the light of all other circumstances, even if age is a mandatory guideline.
I respectfully dissent.
NOTES
[*] Judges, Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] Cocaine is an alkaloid derived from the leaves of the coca plant. Although generally considered as a narcotic, cocaine is actually a central nervous system stimulant similar to the amphetamines. [Distribution of amphetamines carries no minimum sentence, but does have maximum sentence of ten years plus a possible fine of up to $15,000.00.] In small doses, cocaine produces a pleasurable state of well-being and relief from fatigue. While cocaine is habit forming and may be physically addictive in some individuals, these characteristics are not of the same degree as found in the opiates such as heroin or morphine.
[2] The full text of article 894.1 states:

"A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
"B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
"C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."
[3] Defendant's only adult offenses prior to his arrest on the instant charge were two speeding tickets and a first offense DWI. Defendant has no juvenile record.
[4] Dilaudid is a morphine derivative used in the treatment of moderate to severe pain.
[5] Doriden is an hypnotic prescribed for the short term treatment of insomnia. Chemically, Doriden is composed of glutethimide which is a Schedule III drug. Distribution or possession of these drugs carries substantially lower penalties than those for distribution or possession of Schedule II narcotics.
[6] We base our determination of quantity on the relative prices paid in the two cases. Agent Fischer paid $60.00 for the cocaine he purchased from this defendant. Cain sold cocaine for a total price of $4,600.00. Agent Fischer testified that defendant had approximately thirty packets for sale, making a total amount of $300.00.