LOBRANO, Judge.
Defendant, Lester L. Roberts, was charged by bill of information with distribution of cocaine, a violation of Louisiana Revised Statute 40:967.
Defendant was arraigned on December 20, 1989 and pled not guilty. Defendant was tried on June 13, 1990 and was found guilty as charged by a twelve member jury. On June 20, 1990, defendant was sentenced to fifteen (15) years at hard labor. On January 11, 1991, the State filed a multiple bill of information pursuant to Louisiana Revised Statute 15:529.1 charging defendant with being a multiple offender. Defendant filed a Motion to Quash arguing the multiple bill of information was untime *761 ly filed. Defendant’s Motion to Quash was denied. Following the multiple bill hearing defendant admitted he pled guilty to forcible rape in 1988. His prior sentence was vacated and defendant was resentenced to fifteen (15) years at hard labor as a multiple offender.
FACTS:
On October 31, 1989, New Orleans Police Officers Tommy Mercadel, Timothy Bayard and Charlie Watkins were conducting an undercover operation aimed at discovering and arresting street level drug dealers. The operation was called “Operation Curb Service”. At approximately 10:00 p.m. Officer Mercadel drove to the corner of Willow and Erato Streets where he observed defendant standing at the corner. Defendant was wearing a pink shirt and gray stonewashed jeans. Defendant whistled and waved at Mercadel who had parked on the opposite side of the street. Defendant crossed the street, told Mercadel to get out of the car and asked, “What you need man? All I got is 20’s”. Mercadel indicated that he wanted to purchase one. Defendant handed him a piece of rock-like substance wrapped in plastic paper. Lab tests later proved the substance to be crack cocaine. Mercadel then returned to his car. He radioed officers Bayard and Watkins, gave them his location and informed them that he had just purchased cocaine from a man in a pink shirt and gray pants. Merca-del then drove away returning several minutes later. He observed officers Bayard and Watkins speaking to defendant. Mer-eadel nodded to them, and by radio, told them they had the right suspect. Officers Bayard and Watkins did not arrest defendant that evening. Instead they had defendant complete a Field Interview Card which lists his name, address and social security number. This information was used to arrest defendant in November 1989 after “Operation Curb Service” was completed.
Defendant testified on his own behalf. He admitted to being previously convicted of cocaine possession and forcible rape. He stated that he did not sell cocaine to Officer Mercadel. He testified that on the night in question, he left his job at Metairie Country Club at 10:00 p.m. He changed from his waiter’s uniform to street clothes which included a pink shirt. He stated that on his way home he realized he needed to stop by his auto mechanic’s shop. When he discovered the mechanic was not there, he walked to Willow and Erato Streets where he found the mechanic working under a truck. As he was waiting for the mechanic to finish the job, Officer Bayard approached him. He testified that he saw Bing Elvis Crosby and about six other people on the corner.
Bing Elvis Crosby testified for defendant. He admitted that he had been arrested as part of “Operation Curb Service” and pled guilty to distribution of cocaine on October 31st and on an earlier date in September. Crosby testified that he was stopped by Officer Bayard on October 31, 1989 at Willow and Erato Streets and asked to fill out a card. He stated that he did not see defendant selling drugs.
Officer Timothy Bayard testified in rebuttal. He stated that when he interviewed defendant on October 31st there was only one other man on the street, Baldwin Skinner. Crosby was not at the corner. Bayard further testified, that the two men are easily identifiable. Defendant has a gold tooth but Crosby does not. Crosby has a scar on his face but defendant does not. In addition, defendant was the only man on the corner wearing a pink shirt. Bayard also testified that defendant did not mention waiting for his mechanic at the time he was interviewed.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The trial court erred in denying his Motion to Quash the multiple bill of information;
2) The trial court erred in imposing an excessive sentence;
3) In addition, defendant requests a review of the record for errors patent.
ASSIGNMENT OF ERROR 1:
Defendant asserts the state erred by filing an untimely multiple bill of information against him because the state was *762 aware of his prior felony record when he was originally sentenced on June 20, 1990. Seven months later, on January 11, 1991, the State filed the multiple bill.
Louisiana Revised Statute 15:529.1(D) does not provide a prescriptive period during which the State must file an habitual offender bill. However, the district attorney must file an habitual offender bill within a reasonable time after the prosecution knows that a defendant has a prior felony record. State v. Broussard, 416 So.2d 109 (La.1982). In reviewing the jurisprudence, the courts of this state have looked to the particular circumstances of each case when deciding whether the multiple bill was timely filed.
We recognize the jurisprudence addresses specific reasons enunciated by the state for delays in filing the multiple bill[1] and that the state, in the instant case, has provided no such reasons. Nevertheless, considering defendant received an original sentence of fifteen (15) years, we do not find that the state’s seven month delay in filing was unreasonable.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 2:
Defendant asserts the trial court imposed an excessive sentence.
The Louisiana Constitution prohibits, the imposition of excessive punishment. Art. I, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment that is enforceable by this court on appellate review. State v. Cann, 471 So.2d 701 (La. 1985); State v. Thomas, 447 So.2d 1053 (La.1984); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir. 1986), writ den. 503 So.2d 13 (La.1987).
A sentence which appears to be severe is considered excessive and unconstitutional if it is “grossly out of proportion to the severity of the crime” or “is nothing more than the purposeless and needless imposition of pain and suffering.” State v. Brogdon, 451 So.2d 616 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983).
The trial judge must articulate reasons for an apparently severe sentence tailoring it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981); State v. Francosi, supra. Code of Criminal Procedure Art. 894.1 sets forth the criteria to be used by the trial court in its determination. The trial court need not articulate every circumstance cited, but it must indicate that it considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981). Not only the aggravating circumstances, but the mitigating circumstances as well must be considered, State v. Franks, 373 So.2d 1307 (La.1979) and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La. 1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La. 1982), affirmed on remand 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
In its original reasons for sentence, the trial court stated:
“Under 894.1 of the Code of Criminal Procedure, the Court feels that if the defendant were to receive a suspended sentence or be placed on probation, there is an undue risk that during the period of a suspended sentence or probation that the defendant would commit another crime.
*763 Secondly, the Court feels the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
Finally, I feel that any lesser sentence than the one I will impose will deprecate the seriousness of the defendant’s charge.
It should be stated for the record, also, that this defendant has a prior felony conviction for the crime of forcible rape and the crime of possession of cocaine. It should also be stated for the record that the defendant is not eligible to receive a suspended sentence or be placed on probation for this particular charge. That is pursuant to the provisions of 894 of the Code of Criminal Procedure.
The Court is also aware of the mitigating circumstances under 894.1 of the Code of Criminal Procedure. The Court feels that the defendant’s conduct does cause or threaten serious harm. The sale of crack cocaine on the streets of this city, in my opinion, is a very serious problem, and it does threaten and cause harm to other people in this community.
Secondly, the Court feels that the defendant did contemplate that his conduct would cause or threaten serious harm. Thirdly, the Court does not find from the record that the defendant acted under any strong provocation.
Fourthly, there are no grounds which tend to excuse or justify the defendant’s criminal conduct.
Number five and six talk about the victim of the defendant’s conduct inducing or facilitating the commission of this offense and that the defendant is in a position to compensate or will compensate the victim of the crime for any damage or loss sustained. Those do not apply-
The defendant has a history of criminal delinquency and criminal activity, and the defendant has not led a law-abiding life for any substantial period of time prior to the commission of this crime. The defendant’s criminal conduct was the result of circumstances, in my opinion, which are likely to occur again if the defendant is given a suspended sentence or placed on probation.
The character and attitudes of the defendant indicate that he is not — indicate to me that he is likely to commit another crime if given a suspended sentence.
The defendant is not likely to respond affirmatively to probationary treatment. The Court does find that imprisonment of the defendant will entail a hardship to him and/or his dependents, but I must balance the need for society to incarcerate you against the hardship that you suffer as a result of incarceration. And I find that the need of society is greater to have you incarcerated rather than to consider the harm or difficulty that you suffer as a result of imprisonment.”
We conclude the trial court adequately considered the Art. 894.1 guidelines in imposing this particular sentence for this particular defendant convicted of this particular crime. State v. Gulden, supra.
Although not unbridled, the trial court is given great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Bradley, 414 So.2d 724 (La.1982); State v. Washington, 414 So.2d 313 (La.1982).
Once adequate compliance with Art. 894.1 is found, the reviewing court must look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of defendant’s case, keeping in mind that the maximum sentences should be reserved for the most egregious of offenders. State v. Cann, supra; State v. Brogdon, supra; State v. Francosi, supra; State v. Davis, 485 So.2d 981 (La.App. 4th Cir.1986), writ den. 488 So.2d 1019 (La.1986).
Defendant asserts his sentence is excessive because he was charged with possession and distribution of one $20.00 rock of cocaine. In support of his argument, defendant cites three cases where sentences were vacated as excessive on the grounds that the defendants were not large scale drug dealers. The facts of these cases are *764 distinguishable from the instant case. State v. Gordon, 444 So.2d 1188 (La.1984); State v. Tilley, supra; State v. Strickland, 486 So.2d 1015 (La.App. 2d Cir.1987). In Gordon, supra, the court cited the absence of criminal activity in the past, a steady employment record and military service as factors weighing against the imposition of a twenty year sentence against the defendant. In Tilley, supra, the defendant, an eighteen year old first offender, had a stable employment record and lived with his physically disabled mother. In Strickland, supra, the ameliorating factors were the defendant’s youth, her employment record, the fact that she had no criminal record.
In the instant case, defendant was convicted of forcible rape in 1988 and possession of cocaine in 1986. We further note that defendant was not given the maximum sentence either on original sentencing or under the Habitual Offender Statute.
Accordingly, we find no merit to defendant’s assertion that his sentence is excessive. See, State v. Batista, 496 So.2d 1165 (La.App. 4th Cir.1986).
This assignment of error is without merit.
ASSIGNMENT OF ERROR 3:
Defendant has requested a review for errors patent.
We have conducted an independent review of the record and we find no non-frivolous issues that were not raised in this appeal. We determine there are no errors patent on the record.
For the reasons assigned above, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. State v. Thompson, 539 So.2d 1008 (La.App. 4th Cir. 1989), writ den., 544 So.2d 399 (La. 1989); State v. Miskell, 538 So.2d 1055 (La.App. 4th Cir. 1989), writ den., 542 So.2d 6 (La.1989); State v. Abraham, 521 So.2d 511 (La.App. 4th Cir.1988); State v. Patterson, 459 So.2d 714 (La. App. 4th Cir.1984); State v. Ross, 542 So.2d 631 (La.App. 5th Cir.1989).