650 So.2d 793 (1995)
STATE of Louisiana
v.
Gilroy MERRILL.
No. 94-KA-0716.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1995.
*794 John F. Rowley, Dist. Atty., Glenn E. Diaz, and Walker H. Drake, Jr., Asst. Dist. Attys., Chalmette, for the State.
Arcenious F. Armond, Jr., Gretna, for defendant.
Before BARRY, ARMSTRONG and PLOTKIN, JJ.
*795 PLOTKIN, Judge.
On July 9, 1992, defendant, Gilroy Merrill, was arrested for possession with intent to distribute and/or distribution of a controlled and dangerous substancecocainein violation of La.R.S. 40:967. On April 12, 1993, approximately ten months later, the State filed a bill of information charging him only with distribution of cocaine, a violation of La.R.S. 40:967(B). Also in April of 1993, the defendant was charged with forgery, a violation of La.R.S. 14:72, for conduct that took place on or about August 21, 1992. Subsequently, on September 21, 1993, the state amended the forgery charge to theft, a violation of La.R.S. 14:67; the defendant pled guilty to the amended charge and received a probated sentence. On October 6, 1993, the defendant proceeded to trial in the instant case and was found guilty as charged. He was sentenced to 20 years at hard labor on November 19, 1993.
Sergeant Michael Lafrance testified that on July 9, 1992, he and Agent Kelly Lauga were working undercover and were on patrol in an unmarked police car. As they drove on Second Street toward A Street in St. Bernard Parish, a black male waved the car down and asked Lafrance, who was driving, what he was looking for. Lafrance told the black male that he wanted to buy a "twenty," referring to an amount of crack cocaine.
The black male told Lafrance to drive around the block, which Lafrance did. The black male then told Lafrance to drive around the block again because the cocaine had not yet been cut up. When he returned from the second trip around the block, Lafrance gave the black male a $20 bill in exchange for one rock of crack cocaine. Lafrance radioed a description to Sgt. Alan Pohlman who, along with other officers, apprehended the defendant.
Pohlman testified he had received numerous complaints of drug activity in the area. He gave Lafrance $40 to make purchases of cocaine.[1] He said that after he received the description, he closed in on the defendant within ten minutes and found him in the same place Lafrance had described. Pohlman handcuffed defendant, after which Lafrance returned to the scene and identified the defendant. The defendant was then advised of his rights, put into a police car, and taken to the police station. The defendant later said that he knew he had sold narcotics to an undercover officer and that he wished to help the police with their narcotics work.
Lauga testified that he saw the defendant sell the cocaine to Lafrance. He identified the defendant at the scene. Lauga said that after he signed a "rights of arrestee" form, the defendant admitted having made the sale.

ASSIGNMENT OF ERROR ONE
The defendant argues that his sentence was unconstitutionally excessive and that the trial court improperly departed from the Sentencing Guidelines. The penalty for violating La.R.S. 40:967(B) is imprisonment at hard labor for a period of not less than five years nor more than 30 years. If one considers the defendant's plea of guilty to a subsequent theft charge prior to trial and sentencing in the instant case as a "prior conviction," § 403 of the Sentencing Guidelines indicates that the defendant could be imprisoned for 36 to 84 months. However, if the prior theft conviction is not considered as a "prior conviction," the sentencing range is 36 to 60 months. The trial court sentenced the defendant to 240 months.
In this case, the trial court correctly noted that the defendant was on probation when he was charged with the instant crime. Defendant argues that because his conduct leading to the theft charge took place after the conduct leading to the instant case, he had no prior convictions and the trial court should not have considered that conviction in imposing sentence in this case. This argument is without merit.[2]
*796 Section 205 of the Sentencing Guidelines defines what constitutes a prior conviction: "`Prior conviction' or `prior adjudication,' for purposes of the Guidelines, means a plea of guilty or nolo contendere, a verdict of guilty, a judgment of guilt, or an adjudication of delinquency occurring before the conviction for the offense which serves as the basis for the current sentencing." La.S.G. § 205(B)(8). On its face, then, § 205 does not define "prior convictions" in terms of when the conduct occurred. Rather, the touchstone is the timing of conviction. The Introduction to the Sentencing Guidelines makes this point abundantly clear:
The terms "prior conviction" and "prior adjudication" are defined in terms of the sequence of the plea or verdict occurring before the conviction for the current offense, not in terms of the sequence of commission of the respective offenses. For example, a defendant could be arrested for an offense committed in January and for a second offense committed in February. If he is convicted of the February offense, and is subsequently convicted of the January offense, the February offense conviction is counted as a "prior conviction" in determining his criminal history index to determine his classification for purpose of setting the sentencing range for the conviction of the January offense. Unlike the theory of the habitual offender proceeding, for purposes of computing the Guidelines criminal history index the offender need not first be convicted of the "prior offense" and then commit and be convicted of the subsequent event.
Cheney C. Joseph et al., Introduction to Louisiana Sentencing Guidelines Manual 3, 25-26 (1993).
As this excerpt states, the provisions of the habitual offender law, La.R.S. 15:529.1, differ from § 205 of the Sentencing Guidelines. In pertinent part, the habitual offender law states: "Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state shall be punished" as a habitual offender. La.R.S. 15:529.1(A). The emphasized portions of the statute clearly require that a defendant must commit a crime and be convicted of that crime and then commit and be convicted of another crime before the multiple offender law becomes applicable.
The argument that § 205 parallels the multiple offender law and thus requires crime, conviction, crime, conviction was presented to the court in State v. Washington, 621 So.2d 114, 119-20 (La.App.2d Cir.), writ denied, 626 So.2d 1177 (La.1993). In that case, the defendant was charged with possession of a firearm by a convicted felon for conduct that took place on May 5, 1991. On June 17, 1991, he pled guilty to simple criminal damage to property, apparently stemming from an unrelated incident occurring before his arrest for the firearm offense. When he was sentenced for the firearm offense, he argued that the criminal damage to property conviction should not be used in computing his sentence under the Sentencing Guidelines because he had not been convicted of that offense at the time he committed the firearm offense. After reviewing § 205(B)(8) of the Sentencing Guidelines and the explication of that section in the Introduction to the Sentencing Guidelines quoted above, the court rejected the defendant's argument. Id. at 120. We find no reason to reach a contrary result in this case.
However, that does not end our inquiry with respect to the defendant's sentence. We may still vacate the sentence if we find that it is unconstitutionally excessive. The Louisiana Supreme Court recently held that the Sentencing Guidelines "are not mandatory" and that
(1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, C.Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, *797 adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
State v. Smith, 93-0402, p. 3 (La. 7/5/94); 639 So.2d 237, 240. Under Smith, the trial judge has "discretion to reject the Guidelines." This means that the sentence suggested by the Guidelines may be ignored if the actual sentence imposed is within the statutory sentencing range for the crime with which the defendant has been convicted. As long as the trial judge considers the Guidelines and states a consideration and basis for the sentence, appellate review is limited to a consideration of unconstitutional excessiveness. Id.
Article I, § 20 of the Louisiana Constitution of 1974 prohibits excessive punishment. Punishment is unconstitutionally excessive if (1) it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless and needless imposition of pain and suffering or (2) is grossly out of proportion to the severity of the crime. State v. Telsee, 425 So.2d 1251, 1253 (La.1983); State v. Villavicencio, 528 So.2d 215, 217 (La.App. 4th Cir.), writ denied, 533 So.2d 14 (La.1988). The sentencing court has great discretion. Villavicencio, 528 So.2d at 217. A maximum sentence is reserved for the most egregious and blameworthy of offenders. Telsee, 425 So.2d at 1253.
The factors articulated by the trial court as required by La.C.Cr.P. art. 894.1 and Smith are an important aid in reviewing an allegedly excessive sentence. See State v. Sepulvado, 367 So.2d 762, 769 (La.1979). Telsee and Sepulvado held that the criteria under La.C.Cr.P. art. 894.1 are to be considered when determining if a sentence within statutory limits is excessive.
Although the defendant was convicted of selling one rock of cocaine and pled guilty to an offense two weeks prior to the trial for which he received a suspended sentence, the trial court stated:
Let the record reflect that in sentencing Mr. Merrill in the manner that I did, I did take into consideration the Sentencing Guidelines as set out in our Criminal Code. The Court took note of the fact that Mr. Merrill is a convicted felon. He was on probation at the time that he was charged with this particular crime. So, the court was made aware of the fact by Mr. Merrill now and before that there were some other pending charges against him, all dealing with cocaine. However, since he had not been convicted of those charges, I certainly did not take into consideration the pending charges in sentencing him in the manner that I did. I think to give any less of a sentence than I did would deprecate the seriousness of this particular offense.
Sentences as harsh as the one the defendant received have generally been found to be excessive when imposed on first offenders who have not been found to be large-scale dealers. For example, in a per curiam opinion in State v. Flowers, 559 So.2d 1372 (La. 1990), the court noted that the defendant's total consecutive sentences of thirty years were excessive where the defendant was a first felony offender with family dependents and where he distributed "relatively small amounts of cocaine to the same undercover agent approximately one month apart." Id. at 1372.
Similarly, in State v. Gordon, 444 So.2d 1188 (La.1984), the defendant pled guilty to various counts of distribution and conspiracy to distribute cocaine and received a 20-year suspended sentence on one count. The court found the sentence to be excessive even though the sentence was suspended because it was very likely that the defendant would violate his probation because of his drug addiction. The court noted that the defendant had led a productive life, had no prior criminal record, and had apparently only sold a small amount of cocaine within a short period of time in order to support his addiction. Id. at 1191. Likewise, in State v. Tilley, 400 So.2d 1363 (La.1981), the defendant's 21-year sentence was found to be excessive where the defendant was a small-scale seller, had no felony record (his prior convictions were for a few traffic violations *798 and DWI), was 18 years old, and cared for a disabled parent. Id. at 1366-67.
However, in State v. Cann, 471 So.2d 701 (La.1985), the defendant was found guilty of one count of distribution of marijuana and three counts of distribution of cocaine. He was sentenced to five years on the marijuana count and to one 30-year and two 15-year sentences on the cocaine counts. The defendant owned a store that he ran with his wife and supported his six children. He was a veteran and had several arrests and convictions as an adult for drug-related offenses. The sales of drugs to an undercover officer all occurred within a five-week period. Although the court found his sentences to be excessive in that they were ordered to be served consecutively, it also found that none of the sentences were individually excessive. The court ordered the sentences to be served concurrently. Id. at 703-04.
In State v. Strickland, 486 So.2d 1015 (La. App.2d Cir.1986), the defendant's 20-year sentence for possession with intent to distribute cocaine was found to be excessive. The defendant had no prior criminal record and had distributed a small amount of cocaine on two occasions to undercover agents. Relying on Tilley and Gordon, the court found the sentence was excessive because the defendant was not a large-scale drug dealer. Id. at 1017-18.
By contrast, in State v. Williams, 457 So.2d 902 (La.App. 3d Cir.), writ denied, 461 So.2d 313 (La.1984), the court upheld a 20-year sentence imposed on a defendant convicted of possession with intent to distribute cocaine. The defendant had an extensive history of criminal activity and there was evidence that he was a major dealer of numerous illegal drugs. Id. at 909-10. The Third Circuit based its holding in part on State v. Bonanno, 384 So.2d 355 (La.1980), where the court upheld a 21-year sentence imposed on a large-scale dealer of cocaine. (Bonanno was found with one pound of cocaine and there was evidence that he intended to develop a large cocaine market in the area.)
In State v. McNeil, 613 So.2d 752 (La.App. 4th Cir.), writ granted in part and denied in part, 623 So.2d 1320 (La.1993), the defendant distributed a small amount of crack cocaine. However, his criminal history included a drug conviction and a conviction for a violent crime. This court held that a 20-year sentence was not excessive; however, the Supreme Court reversed because the trial court had not provided a factual basis for the apparently severe sentence. State v. McNeil, 623 So.2d 1320, 1320 (La.1993).
Our review of the facts underlying this case and those discussed above convinces us that the trial court imposed an excessive sentence in this case. Even considering defendant's prior conviction, the maximum range recommended by the Sentencing Guidelines was 84 months. Defendant's sentence of 240 months is thus nearly three times the recommended maximum sentence. Such a departure from the Guidelines cannot be supported by the mere statement that "any less of a sentence ... would deprecate the seriousness of this particular offense." Accordingly, we find that the sentence in this case is excessive and we remand the case to the trial court for resentencing in a manner consistent with the views expressed in this opinion.

ASSIGNMENT OF ERROR TWO
The defendant argues the trial court erred in admitting an inculpatory statement in contravention of La.C.Cr.P. arts. 768 and 769. Code of Criminal Procedure article 768 requires that the State notify the defendant in writing prior to commencing its opening statement that it plans to introduce an inculpatory statement of the defendant. The defendant argues the State did not give the required notice.
The record contains a document entitled "NOTICE OF INTENT TO USE INCULPATORY STATEMENTS," dated October 6, 1993. The motion does not contain a clock stamp indicating whether it was filed before the trial began on October 6, 1993. The record does not reflect a minute entry that the motion was ever filed. The transcript contains a discussion about the "Notice of Intent to Introduce Certificate of Laboratory Examination," filed June 10, 1993, but no discussion of any kind about the intent to use *799 inculpatory statements. However, the State did lay a proper predicate for the introduction of the defendant's inculpatory statement.
We conclude that the notice contained in the record and the predicate for admission presented by the State were sufficient to allow the State to admit the defendant's inculpatory statement into evidence. We reserve to the defendant the right to raise in a post-conviction relief application the issue of whether the notice was appropriately and timely filed.
The defendant also argues that the State did not mention the inculpatory statement in its opening argument as required by La. C.Cr.P. art. 769. However, La.C.Cr.P. art. 767 provides that "[t]he State shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
This assignment of error is without merit.

ASSIGNMENT OF ERROR THREE
The defendant argues that the State failed to present sufficient evidence to support his conviction. The standard for testing the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In this case, Officer Lafrance testified the defendant gave him a piece of crack cocaine in exchange for $20. Officer Lauga testified he witnessed the transaction. Both officers were confident in their identifications. The State introduced a crime laboratory certificate establishing that the substance was in fact cocaine. These facts sufficiently support the conviction for distribution of cocaine. Compare State v. Harris, 93-0416 (La.App. 4th Cir. 3/29/94); 635 So.2d 389, rev'd, 94-0970 (La. 12/8/94); 647 So.2d 337.

ASSIGNMENT OF ERROR FOUR
The defendant argues that the chain of custody concerning the crack cocaine was not properly established by the State. Accordingly, he argues that the evidence should have been suppressed. However, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than its admissibility. State v. Sam, 412 So.2d 1082, 1086 (La.1982); State v. Alexander, 621 So.2d 861, 864 (La.App. 5th Cir.), writ granted and case remanded for resentencing, 629 So.2d 376 (La.1993).
In order to introduce demonstrative evidence at trial, the law requires that the object be identified. This identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered in evidence.) State v. Sweeney, 443 So.2d 522, 528 (La.1983).
The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices that it is more probable than not that the object is the one connected to the case. State v. Frey, 568 So.2d 576, 578 (La.App. 4th Cir.1990), writ denied, 573 So.2d 1118 (La.1991).
The only witness to testify about the chain of custody was Officer Lafrance. He stated that he purchased the cocaine from the defendant on July 9, 1992, and immediately placed it into a cellophane wrapper. When Sgt. Pohlman arrived, Officer Lafrance turned the wrapper over to him. Sergeant Pohlman did not testify as to what he did with the evidence. There is no record of its entry on a property book and no record of when it was mailed to the State Police Crime Laboratory in Baton Rouge.
At trial, the State asked Officer Lafrance to identify an envelope sealed with Louisiana State Police Crime Laboratory tape. The envelope contained the following writings: the agency file number, G-00916-92 (the St. Bernard Parish Police item number); the date received in lab, 8-6-92; and Reference(s), Gilroy Merrill. Neither Officer Lafrance's name nor his initials were on the outer envelope. The prosecutor asked Officer Lafrance to identify the police report and item number G-00916-92. The defendant *800 objected, but the trial court overruled the objection. Thereafter, Officer Lafrance opened the first envelope and produced a second envelope sealed with Louisiana State Police Crime Laboratory tape. This envelope contained writings linking the evidence to the defendant and the item number G-00916-92, along with Officer Lafrance's initials. Officer Lafrance identified his initials and the item number. He then opened the second sealed envelope, which contained the cocaine and identified the item number, G-00916-92; the date, 7-9-92; and the initials, M.L.
Although there is a gap in the chain of custody in that Sgt. Pohlman failed to testify as to what he did with the evidence and when it was forwarded to the Louisiana State Police Crime Laboratory, there is sufficient evidence to permit its introduction into evidence. Officer Lafrance identified a police report with his name appearing on it, although he admitted that he did not prepare or sign that police report. The police report item number matched the number on an envelope from the State Police Crime Laboratory. The defendant's name appeared on the envelope, as did a number that matched the item number on the police report. Officer Lafrance opened the envelope and found a second envelope with his initials on it. The cocaine was inside this envelope. Under these facts, we conclude that it is more probable than not that the cocaine was connected to Officer Lafrance's purchase from the defendant, despite the gap in the chain of custody from the time it was seized to the time it was offered into evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR FIVE
The defendant argues his counsel was ineffective. A claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief. State v. Prudholm, 446 So.2d 729, 737 (La.1984); State v. Reed, 483 So.2d 1278, 1280 (La.App. 4th Cir.1986). Only when the record contains sufficient evidence to address the merits of a defendant's claim of ineffective assistance of counsel will the appellate court consider the claim. State v. Seiss, 428 So.2d 444, 449 (La.1983).
The defendant has raised issues in his claim of ineffective assistance of counsel that we are unable to decide on the basis of the record now before us. He alleges that Sgt. Pohlman was under investigation for mishandling funds and narcotics and that Sgt. Pohlman was ultimately dismissed from the Sheriff's office. There is no indication in the record that either of these accusations is true or that the defense attorney knew of any of these facts.
The defendant also argues that his attorney should have moved for a mistrial when the officers referred to the defendant as a "snitch" or a "rat" when they stated that he agreed to become a confidential informant for them. In addition, we have noted the problem relating to the notice of intent to introduce the defendant's inculpatory error, and reserved that issue for post-conviction relief.
Finally, the defendant argues that he should have testified at trial. Whether this was a considered trial strategy or his counsel's decision is a valid post-conviction relief issue under the facts of this case. We therefore pretermit ruling on this assignment of error and refer defendant's arguments to an application for post-conviction relief.

ERRORS PATENT
A review of the record reveals no errors patent.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. However, we reverse and vacate the sentence imposed by the trial court. We hereby remand the case to the trial court for resentencing in a manner consistent with the views expressed in this opinion.
CONVICTION AFFIRMED; SENTENCE REVERSED; REMANDED FOR RESENTENCING.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting with reasons.
The range of sentence for distribution of cocaine is 5 to 30 yearsthe defendant was sentenced to 20 years. The trial judge articulated *801 in his reasons for sentence that he reviewed the sentencing guidelines.
Considering the great discretion afforded the trial court in sentencing, and after the trial judge stated that he considered the sentencing guidelines, I have no basis to substitute my judgment as to an appropriate sentence.
I also dissent as to the majority's conclusion on the inculpatory statement. The majority concludes that "the notice contained in the record and predicate for admission presented by the State were sufficient to allow the State to admit the defendant's inculpatory statement." The majority then reserves to the defendant the right to raise the timeliness of the notice by post conviction relief. If there is enough information to decide the issue, there is no basis to suggest that it could be raised later by post conviction relief.
The State did not give timely notice of its intent to use the inculpatory statement prior to trial. However, the evidence is overwhelming as to the defendant's guilt of distribution of cocaine. Considering the overwhelming evidence that error was harmless. State v. Collins, 584 So.2d 356, 362 (La.App. 4th Cir.1991).
I would affirm the conviction and sentence.
NOTES
[1] The police report indicates that Officer Pohlman possessed $80 in marked money; however, none of the marked money was recovered.
[2] Although this court reached a contrary result in an earlier opinion in this case, dated December 28, 1994, that opinion was recalled ex proprio motu by order of this court on January 12, 1995. This opinion should be substituted for the prior opinion. Any conclusions reached in the prior opinion, to the extent that they contradict anything contained in this opinion, should be disregarded.