L Judge TERRI F. LOVE.

STATEMENT OF THE CASE

On April 20, 1999, the appellant, Ta-mond Dunbar, was charged with one count of the possession with the intent to distribute cocaine.[1] At his arraignment on April 23, 1999, he pled not guilty. On September 30, 1999, he waived the jury and was tried by the court. At the conclusion of the one-day trial, the court found him *180 guilty of attempted possession with the intent to distribute cocaine. On November 18, 1999, he pled guilty to a multiple bill. The court then sentenced him as a second offender to serve seven and one-half years at hard labor. He orally moved for an appeal on that date, and on November 22, 1999, the court granted his motion for appeal.

FACTS

On April 5, 1999, police officers set up an undercover purchase of cocaine from 7700 Read Boulevard, Apartment 3. Officer Kenya Huggins directly participated in the purchase, and he was equipped with a radio transmitter. Detective Donald Polk, who was in charge of the operation, was in receipt of the transmission and also was in visual contact with Officer Huggins. Detective Polk testified he watched Officer Huggins go to the |2targeted apartment and knock on the door. Detective Polk testified the door was opened by an unknown female. Detective Polk stated Officer Huggins told the woman he wanted a couple of “dimes”. The woman called to another person, and in response a man later identified as Manzel Gould came to the door. Detective Polk stated Officer Huggins repeated his request for drugs, and Gould called to another person. At that point, a man later identified as the defendant, Tamond Dunbar, came to the door, and Officer Huggins repeated his request. Detective Polk testified Dunbar directed Officer Huggins to stand on the corner, less than a block away from the apartment. Officer Huggins walked to the corner, and a few minutes later Gould and Dunbar followed. Officer Huggins then exchanged currency in the amount of $20 for an object. Detective Polk testified the currency used in the purchase had been photocopied prior to the operation. Officer Huggins then walked away from the other two men and gave a pre-arranged signal to Detective Polk indicating the purchase was made. At that point, Detective Polk notified other officers in the area, and these officers stopped and arrested both Gould and Dunbar. Detective Polk testified he also obtained a warrant to search the apartment, but no other, drugs were found when the warrant was executed.
Officer Huggins testified he was the officer who purchased the cocaine from Dunbar and Gould. He testified he went to the apartment, and when a woman answered the door, he asked for a certain person by nickname (he could not remember the nickname at trial). Officer Huggins testified the woman closed the door, and when the door reopened, Gould was standing at the door. Officer Huggins testified he told Gould he was interested in purchasing a “dime” or a “twenty”. Offi-' cer Huggins stated Gould then closed the door, and when it reopened Dunbar was at the door. UThey discussed Officer Huggins’ intent to buy cocaine, and Dunbar told him he could get Officer Huggins what he wanted for $20. Officer Huggins testified he told Dunbar he would meet him on the corner. Officer Huggins testified he went to the corner, and soon thereafter he was joined by both Dunbar and Gould. He testified he gave Dunbar a prerecorded $20 bill, and in exchange he received from Dunbar a rock of what appeared to be crack cocaine. Officer Huggins stated that after Dunbar and Gould were arrested, he went back to the scene and positively identified them as the people involved in the purchase. He stated he was not present when either man was arrested.-
Officer Joseph Williams and Detective Roy Phillips were assigned take-down detail, and they arrested Dunbar and Gould. Officer Williams testified that as they approached, Dunbar ran into the apartment, and he chased Dunbar, capturing him as *181 he tried to exit the back door to the residence. Officer Williams testified that he seized money from Dunbar, including the $20 bill with the serial number matching that given to Dunbar by Officer Huggins. Detective Phillips testified he apprehended Gould just outside the apartment, and incident to Gould’s arrest, he seized four individually-wrapped pieces of crack cocaine.
Among the exhibits introduced at the close of the State’s case was a crime lab report identifying the rock sold to Officer Huggins by Dunbar and the individual rocks seized from Gould as testing positive for cocaine.

Eirors Patent

A review of the record for errors patent reveals the trial court erred in the sentence it imposed upon the defendant. The court imposed the minimum sentence allowed by law for attempted possession with the intent to distribute cocaine as a second offender, seven and one-half years at hard plabor. However, the court erred by failing to order that the first two and one-half years be served without benefit of parole, probation, or suspension of sentence. See La. R.S. 40:967B(4)(b); 40:979. However, this error patent is favorable to the defendant, constituting an illegally lenient sentence, and as such is not to be corrected by this court on review where, as here, it is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986).
There are no other patent errors.

First Assignment of Error

By appellant’s first assignment of error, he contends the State failed to lay the proper foundation for the introduction of State’s Exhibit 7, the crack cocaine allegedly sold to Officer Huggins by the appellant. The appellant argues the State failed to prove that the rock analyzed by the police and found to be cocaine was indeed the actual object he allegedly gave to the officer.
In State v. Merrill, 94-0716, p. 9 (La.App. 4 Cir. 1/31/95), 650 So.2d 793, 799, this court set forth the standard of review in considering a claim of insufficient chain of custody:
[A] lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than its admissibility. State v. Sam, 412 So.2d 1082, 1086 (La.1982); State v. Alexander, 621 So.2d 861, 864 (La.App. 5th Cir.), writ granted and case remanded for resentencing, 629 So.2d 376 (La.1993).
In order to introduce demonstrative evidence at trial, the law requires that the object be identified. This identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered in evidence.) State v. Sweeney, 443 So.2d 522, 528 (La.1983).
|/The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices that it is more probable than not that the object is the one connected to the case. State v. Frey, 568 So.2d 576, 578 (La.App. 4th Cir.1990), writ denied, 573 So.2d 1118 (La.1991).
See also State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004; State v. Borne, 96-1130 (La.App. 4 Cir. 3/19/97), 691 So.2d 1281. The trial court has great discretion in determining whether a party has laid a proper foundation for the introduction of evidence. Lewis, supra.
In Merrill, supra, the defendant contended the State failed to prove the chain of custody because only the arresting offi *182 cer testified as to the chain. The officer testified he placed the cocaine in a cellophane wrapper and gave it to another officer, who did not testify at trial. In addition, there was no testimony as to where that officer took the wrapper or how it arrived at the crime lab. However, at trial the arresting officer identified the sealed envelope from the crime lab upon which had been written pertinent information about the case, including the item number and the arresting officer’s initials. In addition, the officer identified a police report, the item number of which was the same as that listed on the sealed crime lab envelope. This court found the evidence showed it was more probable than not that the cocaine in the envelope was that sold by the defendant to the officer.
Here, the appellant contends the State failed to prove the chain of custody in this case because Officer Huggins was unable to identify exactly to whom he gave the rock the appellant sold him. Officer Huggins merely testified that after receiving the rock from the appellant, he met with the detectives in charge of the case and gave the rock to one of them. The appellant argued at trial and on appeal that because the officer could not | ^establish to whom he gave the rock, there is nothing to establish that State’s Exhibit 7, which tested positive for cocaine, was in fact the object which the officer obtained from him. The appellant’s argument would have more validity if he had not already stipulated to the crime lab report, which, when it was formally introduced at the end of the State’s case, was described by the prosecutor as “showing] that the substance which was sold to Officer Higgins tested positive for cocaine as well as the four individually wrapped pieces found on Defendant Gould, tested positive for cocaine.” The defense did not object to this characterization, and the court responded that the exhibit had “already been stipulated to [sic].” Again, as there was no objection to this remark, the defense apparently stipulated to the report. In addition, when the defense objected to the introduction of State’s Exhibit 7, the actual cocaine rock, the prosecutor noted that the exhibit “was signed in by Detective Polk, who took the stand as the lead investigator and detective on the case. Officer Huggins testified that this was, indeed, the piece of cocaine that was sold to him, by this Defendant, by both Defendants in connection with this matter.” Thus, while neither State’s Exhibit 7 nor the crime lab report are before this court, it appears State’s Exhibit 7 indicates the lead detective signed in the rock of cocaine, thus making it more probable than not that the rock of cocaine in State’s Exhibit 7 was the one sold to Officer Huggins by the appellant. As such, the trial court did not err by finding the exhibits and the officers’ testimony established a sufficient chain of custody for the exhibit. Therefore, this assignment has no merit.

Second Assignment of Error

By his second assignment of error, the appellant contends the evidence presented at trial was insufficient to support his conviction. Specifically, he alleges the evidence did not prove that he was the person |7who sold the rock of cocaine to Officer Huggins because of confused identifications which occurred at trial.
In State v. Ash, 97-2061, pp. 4-5 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 667, this court set forth the standard of review applicable to a claim that, the evidence produced was constitutionally insufficient to support a conviction:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have *183 found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
The appellant was convicted of attempted possession with the intent to distribute cocaine. See La. R.S. 40:967; 40:979. The appellant does not argue that this crime occurred; indeed, the evidence established that the perpetrator sold a rock of cocaine to Officer Huggins, thereby showing more than an attempt to possess the cocaine with the intent to distribute it. The appellant insists, however, that the misidentifícations at trial did not show beyond a reasonable doubt that he was the person who sold the cocaine to Officer Huggins. He points to the testimony of Officer Polk. Officer Polk first identified the appellant as sitting “before the Defense table.” He then |sunhelpfully identified the appellant as “sitting right there to the right. Mr. Gould is sitting — I’m sorry, right there.” He further identified Gould as “the gentleman sitting in the seat right there.” When asked, “At the Defense table, is that correct?” he replied, “Yes, sir.” He then stated: “Mr. Gould is sitting behind the lawyer right there and Mr. Dunbar is sitting at the Defense table.” The appellant points to this testimony to assert that he was not positively identified as the person who actually sold the cocaine to Officer Huggins.
It is true that Officer Polk testified he was able to view the transaction. However, Officer Huggins, who actually participated in the sale, identified Gould as “wearing a white shirt, I can’t see his pants.” When asked if Gould was seated at the defense table, Officer Huggins responded, “Yes.” The prosecutor then stated: “Please note for the record a positive identification of the Defendant Gould as the one who approached the door.” Officer Huggins testified that the “taller guy” then came to the door, who he identified in court as “the guy also wearing a white shirt sitting behind [the] defense table.” The prosecutor then stated: “Please note for the record a positive identification of the Defendant Dunbar in court by the Officer.” Officer Huggins later positively identified the appellant as the man who handed him the crack cocaine. In addition, Officer Williams, who apprehended the appellant, identified him as being “at the defense [sic], seated on the bench, wearing a white long-sleeve open collar shirt.” Detective Phillips, who apprehended Gould, identified him as “the short black male sitting before the bar with a white button shirt.” Thus, even though Detective Polk’s testimony was confusing as to which defendant was which, Officer Huggins and Officer Williams identified the appellant as the man sitting on the bench behind the defense table, and Officer Huggins and | defective Phillips identified Gould as the shorter man sitting at the defense table. Given this testimony, the court could have easily found beyond a reasonable doubt that the appellant, who was sitting on the bench behind the defense table, was the person who sold the rock of crack cocaine to Officer Huggins. This assignment of error also has no merit.
*184 Accordingly, the appellant’s conviction and sentence are affirmed.
AFFIRMED.

. Also charged in the same bill of information was Manzel Gould. He is not a party to this appeal.